Madam Clerk, please hold the second case. Mark 15, 2301. Brian Stanley v. Bill and Madison. Good morning, Your Honors. May it please the Court, Pete Bowder on behalf of the Claimant Council. Your Honors, the crux of this case regards causal connections. There are two other issues addressed in our briefs, and I'll defer to my briefs on those issues because causal connection is really the crux of the case. Mr. Stanley is a first responder, has been a long-time firefighter and paramedic, and on July 11, 2011, injured his right knee while coming and using life-saving measures to save a 750-pound woman who was in respiratory distress. He and his fellow first responders were attempting to drag this woman from her home into an ambulance by use of a tarp and a makeshift ramp into the back of the ambulance. As Mr. Stanley had one foot in the ambulance and one foot on the bumper of the ambulance, his right foot on the bumper of the ambulance, he noticed a pop in his right knee. Prior to state, he had never had any medical treatment for, never missed a day of work for, and never had any medical issue with his right knee. That is undisputed. There is no evidence to the contrary. Similarly, every year in connection with his job, he had to undergo annual physical agility tests as well as a physical examination. He always passed those examinations prior to this work accident. The record explains the care he underwent following this accident and this injury. He ultimately had surgery approximately six months after the injury in November of 2011. Six weeks post-operatively in January of 2012, after post-operative therapy, his treating surgeon, Dr. Bush-Joseph, indicated that he should undergo more conditioning. But at that time, Dr. Bush-Joseph also indicated that it may be unlikely that Mr. Stanley could return to his very heavy job requirements as a firefighter paramedic. Well, we're talking about Bush-Joseph. Did he ever specifically opine a causal connection between the claimant's work injury and the current condition in his knee? I think the best indication, Your Honor, is on page 122 of the record, which is his work status note from February 17, 2012, where it says, number four, the diagnosis treatment is causally related to the alleged industrial accident. Yes. That's on page 122 of the record. And that is in Dr. Bush-Joseph's note following the 2-17-2012 accident. As you know, the arbitrator found in Mr. Stanley's favor, indicating that his prospective surgery of the total knee replacement was necessary and related. The commission reversed. The commission focused on Dr. Bush-Joseph's office note from that same day, 2-17-12, which is on page 122 of the record. In that note, Dr. Bush-Joseph indicated an MMI finding on that day. And interestingly, a month before, he anticipated an MMI finding. Even though during that intervening month, what happened? Well, Mr. Stanley's condition worsened. As he started work conditioning, he only lasted several days. His knee was flaring up. He could barely move. He could have trouble walking. So despite the progress he was having in the post-operative therapy at the end of 2011, in early January of 2012, as work conditioning started, he now started having further problems with the knee. All under the same course of treatment. And to frame it specifically, the commission seemed to find that, yes, there was this incident, there was this accident, but the claimant's injury was a temporary aggravation of a pre-existing degenerative knee condition. You're saying that the result of it was a result of the accident. The commission citing, I think it's Dr. Tonino's opinion, was an aggravation. So why do we come down and decide that it was not temporary aggravation? For several reasons, Your Honor. Specifically, the continuity of care. And if you look at the treatment records as a whole, what Dr. Tonino did, Dr. Tonino focused on, on that February 17th note from Dr. Bush-Joseph and said, oh, he was at MMI on this date, he's at MMI. Dr. Tonino never even addressed the need for the knee replacement surgery because he only saw the petitioner on one occasion, the claimant on one occasion in March of 2012. And he wrote two supplemental reports, but he never saw the claimant again. And specifically, O'Krine, in his last report, I believe it was, that he could not offer an opinion as to whether the surgery was appropriate. And I think, back to, more specifically, I think the continuity of care is what's significant here. In that Mr. Stanley had started having problems in early 2012, what does Dr. Bush-Joseph say? I'm going to maybe administer injections, he says in January, early January, and I'm going to stop the work conditioning. What does he do the next visit? He administers an injection of cortisone, lidocaine, marcaine, deprimembrol, on the day that he also indicates this MMI finding. It's my position that that's inconsistent. He's accelerating the care. He is stepping up, ramping up the care. He is not concluding the care. Who's Dr. L. Aswad and Dr. Saunders? Those are two of the evaluating doctors for his disability pension. Both of those, after that finding, he was awarded the duty disability. What were their conclusions regarding temporary aggravation versus new surgery? What did they conclude? Well, they both pointed out that there was no pre-existing condition, and they both indicated that... Wait a minute, wait a minute. You say they found there was no pre-existing condition? Oh, I'm sorry, Your Honor. They found that there was severe arthritis, one of them, that was Saunders, and L. Aswad found that he had arthritis with sublocation. Saunders said it was severe condition in his right knee. My apology, Your Honor, I misspoke. What I meant to say is they both agreed that there was no pre-existing accident or pre-existing incident other than the work accident. The only history they were provided was this work occurrence. And as the commission and courts have ruled many times and found many times, an aggravation of an underlying condition is compensable under the Act. And as we know from CISPRO and all the cases regarding causation, the work incident only need to be a causative factor in the condition. In the timeline, when did the work hardening program begin? Before or after surgery? It was after surgery, Your Honor. So he had surgery in October, and then in November and December, he went through regular physical therapy. And then at the very beginning of January of 2012, they commenced the work conditioning. It was supposed to be at least a four-week program, after which Dr. Bush-Joseph indicated, we're going to do four weeks of work conditioning, a functional capacity evaluation, and then come back and see me. What actually happened? He did three or four days of work conditioning. He got back to Dr. Bush-Joseph 14 days later after seeing him because of his increasing problems. What does Dr. Bush-Joseph do? He changes his plan of attack. He now administers injections, which he did in February 17th of 2012, and then again he did in June because the symptoms were persisting and because Mr. Stanley's activities of daily life were now being impacted. So the injections were... He did injection therapy before the operation? No, this was post-operative. Post-operative. Post-operative injections, and ultimately, Dr. Bush-Joseph, after the second set of injections in June of 2012, he refers Mr. Stanley to one of his partners for a consult regarding any replacement. Bush-Joseph indicates that the claimant will still have significant arthritis in the joint, which will severely impact his ability to perform his work. And then a couple of sentences later, he says he will require occasional injections and anti-inflammatory medicines to treat his underlying arthritis. Bush-Joseph didn't say he was giving him the injections because of something that was caused by the work injury. He says he's giving him the injections to treat the pain caused by the underlying arthritis, which everybody knows he had before the accident. So why should that be compensable if he's reached MMI? Well, actually, I agree, Your Honor, that those are the facts. But also the facts are that when Dr. Bush-Joseph did the surgery in 2011, what did he find? There was no acute meniscal tear. What he found was loose bodies that he removed and tried to stabilize as best he could. All those loose bodies were arthritic changes. And what does Dr. Bush-Joseph say? I did the note that I referred to, page 122 of the record. All the treatment, at least up through February of 2012, is causally related. Causally related. The first surgery was authorized. The first surgery was paid for. And so this gentleman has no prior history of it needing any treatment for this knee. It was this work accident that was the inciting event that caused the continuity of care that occurred for the year thereafter and has rendered this man unable to return to his job and require further medical treatment now. This is completely analogous, Your Honor, to Kawa, case in 2013. It doesn't have to be the causative factor. It is a causative factor. And the continuity of care is the circumstantial evidence from which this Court, in that case, at least, followed the Commission's decision to the contrary against the manifest weight of the evidence. I think the same standard and the same fact analysis should occur here. It's pretty straightforward. There's no medical evidence that this man treated before or this was, you know, the red straw that broke the camel's back. Well, there was no camel before July 5th of 2011. He never received any treatment. He's a relatively young man, still in his 40s. For that reason, Your Honor, we ask that the Court follow the Commission's decision denying the causal connection against the manifest weight of the evidence and then thereby award the prospect of medical care and the TTD as requested in our brief. Thank you. Thank you, counsel. Good morning. My name is Jill Baker, and I represent the defendant, the village of Matson. The question we have today is whether the decision from the Commission and the Circuit Court is against the manifest weight of the evidence. I argue that it is not, and in fact, most, if not all, of the evidence actually supports the decision. If we look at the initial medical, there was an MRI from July of 2011 a couple of weeks after the accident, and there's a showing of moderate osteoarthritis. If we look at one of the first medical reports from Dr. Shastri from August of 2011, he specifically says, the MRI shows osteoarthritis and that the radiologist also confirmed that there was osteoarthritis. In the report, it shows that the petitioner is given an MRI copy of that film that says, take this to your own doctor and have this condition treated. So from the beginning, there's two separate issues with this knee. There's the injury that he sustained in July while working, and then there's the osteoarthritic injury. The doctor separates them from the very beginning. There's a chronic problem, and then there's this acute injury. He starts treating with Dr. Bush-Joseph. If you look at those records again, Dr. Bush-Joseph separates these two issues. He's got this strain, and he's also got this osteoarthritis. Dr. Bush-Joseph says, we're going to do a diagnostic arthroscopic procedure to see what's going on. Nothing much is found, except for they do see, I think it's characterized as grade 4 arthritis in the knee. So what about the doctrine that the employer takes the claimant as they find them, and it doesn't have to be a sole cause or the primary cause of the condition and well-being, but it is a contributing cause? That seems to be part of his argument. That's part of his argument, but do we have any doctor in the record saying his condition is related to the work accident? No, we have several. We have Dr. Tonino who says it was a temporary aggravation only and not related. We have no opinion from Dr. Bush-Joseph. He did not testify, and his records clearly show that he separated these two injuries, these two issues. So there is no evidence that. So you're saying he's got legitimate points, but the evidence doesn't support his argument. Is that in essence what you're saying? Correct. But Dr. Bush-Joseph, in his report, does say he had an exacerbation of a pre-existing condition related to his injury at work. He does say that, right? He does say that, but if you look at the records, he clearly separates the two issues. We're talking about a man here who was working full-time, full-duty, never been treated before, and then this incident occurred and never got back to work, correct? He went back on a light-duty basis for a small amount of time. He was never able to go back to full-duty. He never went back to full-duty. He was given his disability pension from... Doesn't that seem kind of significant? Temporally? The timing-wise? Well, I think, again, we have to look at... I can't sit here as a doctor and tell you what happened. All I can do is look at the doctor's opinions. And the doctor's opinions we have are Dr. Tonino, who the Commission and the Circuit Court relied upon, saying that there was no causal connection, it was just a temporary exasperation. We have Dr. Bush-Joseph, who continually separates these two issues, and specifically says, if you look at his report, it's just kind of hard to see this as a temporary exasperation when he has not recovered since the accident. He recovered significantly enough that in February of 2012, Dr. Bush-Joseph says he's at MNI for this problem and says, oh, by the way, you need to go seek treatment for this other issue. He says he's at MNI, but he goes on to say his problem is going to continue to impact his ability to perform his work, we're going to continue to do other treatments, etc., etc. My contention is that Dr. Bush-Joseph is saying, first, if you look into the January 2012 report from Dr. Bush-Joseph, he specifically says, and I'm quoting him, certainly there's no indication for further surgical management and no indication for a total knee replacement. That's the treating doctor saying that in his report in January 2012. And then in February 2012, he's separating the two issues, saying, hey, you're at MNI for the work injury, but you should go see another doctor for your osteoarthritic problems, which is what all the doctors have been saying since he first started treating. You've got an osteoarthritic problem, you should have that treated. Counsel, it's your position that the Commission found that this was a temporary exacerbation of a preexisting condition. Correct. Did the Commission ever make that specific finding? I think they just said that they relied upon Dr. Tonino's opinion. I don't know if they specifically... But they noted it. They identified what his testimony was, but then they go in and talk about MMI. How are we to read that decision here? I mean, we know what the result is, but what did the Commission specifically find in regards to causal connection relative to what the claimant's current condition of ill did? Well, I believe they relied upon Dr. Tonino's opinion and Dr. Bush-Joseph's indication of MMI back in February of 2012. I mean, you'll agree with me that MMI has nothing to do with causation. Those are two different concepts. I agree, yes. I mean, I think Counsel Turner implied that we didn't... We paid for his surgery. We paid for his initial treatment. We paid for the surgical treatments, even though in the surgery, they did some cleaning up, but there was no significant injury to the knee that was noted in any of the findings. So we are asking that you look at the record, obviously, and you can see that there's no causal connection opinion, clearly, for many of the physicians. Though there is a connection... Does he need a causal connection opinion? Does he need one? Well, the... He testified, according to counsel, he had a good period, good health, no problems, no miswork, all of a sudden he has this problem. Does he need a medical opinion to carry the day in this case? He could show that there are cases that show that there's a chain of events that occur that cause... We don't need to imply causation when we have an opinion from Dr. Tonino and also just looking at the records from the treating physician showing a clear separation of the two issues. Acute versus chronic? Correct. Based on these arguments, we're asking that you affirm the decision of the commission and the circuit court. Thank you. Thank you, counsel. Counsel, you may respond. Thank you. Briefly, as Justice Stewart pointed out moments ago, I think the commission got caught up in finding the MMI data February 17, 2012 based upon what Joseph indicated and then Dr. Tonino relied upon. They got caught up on that and did confuse MMI and causation. But what I find significant is what counsel referred to with Dr. Bush-Joseph's note in January of 12, wherein he did indicate no further surgical treatment or a total knee replacement would be considered regarding this gentleman. What happened after that? His condition worsened, Dr. Bush-Joseph changed his treatment plan and in February injected the knee and as I said on page 112 I believe is the number that I gave you or 122 is the number I gave you earlier today he indicated that that treatment on that day was related, causally related to the incident. Thereafter, several months later, in June of 2012, he does the same thing and refers Mr. Stanley to his partner who does the knee replacements. Mr. Stanley then goes sees Dr. Levine and what does Dr. Levine say? Dr. Levine says excuse me Dr. Levine says on page 139 of the record this evaluation is part of a workers' compensation injury and then at the conclusion of his report, on page 2 of his report page 140 in the record, Dr. Levine says I've discussed that Mr. Stanley may need to undergo a partial or total knee replacement which would be determined at the time of surgery and he will discuss this with workers' compensation Once again, your honors, is it the most clear causal connection opinion you've ever seen? Absolutely not but how is this any different than the Kala case where the circumstantial evidence, the continuity of care the lack of prior problems doesn't totally point to the fact that this condition, although it is pre-existing, is clearly aggravated by this work significant trauma and the series of events that follow all are consistent and causally related You're referring to Kala case? Yes Is it cited in your brief? Yes, it is. It's cited in my reply brief It's K-A-W-A 2013 a case authored by Justice Stewart You've elevated him to Dr. Stewart now? Well, yeah. Thank you Thank you counsel both for your arguments in this matter and for taking our advice on this positional issue